643 P.2d 508

Joseph J. RICHTER and Theresa B. Richter, husband and wife, Plaintiffs/Appellees,

v.

DAIRY QUEEN OF SOUTHERN ARIZONA, INC., an Arizona corporation, Defendant/Appellant.

No. 2 CA–CIV 4131.

Court of Appeals of Arizona, Division 2.

March 16, 1982.

Quigley & Quigley, P. C. by John M. Quigley, Tucson, for plaintiffs/appellees.

Gaynes & Rockafellow, P. C. by Alex A. Gaynes, Tucson, for defendant/appellant.

OPINION

HATHAWAY, Judge.

We are faced in this case with the interpretation of a franchise agreement's cove-

nant concerning the assignment of the franchisee's interests.

Appellees Richter operate a Dairy Queen store under an agreement with the appellant, Dairy Queen of Southern Arizona, the franchisor. The Richters wanted to sell their business to the Hogans, but the franchisor would not agree to an assignment of the Richters' franchise interests to the Hogans. The Richters and Hogans believed this refusal was in violation of paragraph five of the agreement, which states:

"Licensee agrees that the interest of Licensee hereunder may not be transferred, assigned or alienated in whole or in part without the written consent of Company [Dairy Queen of Southern Arizona], which consent shall not be withheld unreasonably, but Company may insist that any proposed assignee be a person, in Company's judgment, qualified to provide active supervision over the operation of said 'Dairy Queen' store in said territory in compliance with Licensee's obligations therefor hereunder. In the event Licensee's said interest should be so assigned, Licensee shall pay to Company contemporaneously therewith the sum of One Thousand Five Hundred ($1,500.00) Dollars as and for a transfer fee, for the preparation of a new store agreement in assignee's name, and for any and all such expenses incurred by Company in effecting said transfer."

They sued for a declaratory judgment stating that the franchisor withheld its consent unreasonably. The trial court granted an injunction restraining the breach, a remedy provided for in the contract, and found that the Hogans were not third-party beneficiaries in the agreement. The franchisor appealed.

According to appellees, the provision in paragraph five allows the assignment of the Richters' rights and obligations upon the consent of the franchisor but it requires the franchisor to be reasonable in giving consent. "Reasonableness" is defined by an objective standard, i.e., whether the proposed assignee is in fact "qualified to provide active supervision" over the store. The franchisor, on the other hand, claims

that the covenant gives the franchisor the right to decide, on a subjective basis, whether the assignee is qualified. Any arguably valid business reason given by the franchisor for turning down the proposed assignment would, therefore, justify withholding consent.

The problem arises because two separate clauses in one sentence seem to contradict each other. The clause, "the interest of Licensee ... may not be transferred ... without ... consent of Company, which consent shall not be withheld unreasonably" seems to contradict the provision, "but Company may insist that any proposed assignee be a person, in Company's judgment, qualified to provide active supervision ...." We believe this language is susceptible of both parties' interpretations. The first clause sets out a reasonableness standard, which is an objective one. *Cf.*, Annotation, Construction and Effect of Provision in Lease That Consent to Subletting or Assignment Will Not Be Arbitrarily or Unreasonably Withheld, 54 A.L.R.3d 679, § 2. In the second clause, the franchisor has reserved the right to withhold consent if, in its sole judgment, the proposed assignee could not actively supervise the store. We believe the exercise of the franchisor's judgment would be subject to a determination only that it was done in good faith. *See* Restatement (Second) Contracts, § 205, *cf., id.,* § 228, comment a.

The franchisor, however, argued to the trial court only that it withheld its consent reasonably; it claims for the first time on appeal (in its reply brief) that it reserved the right to determine for itself whether the proposed assignee's substitute performance would be acceptable. It is settled that an appellate court cannot consider issues and theories not presented to the court below. *J. H. Mulrein Plumbing Supply Co. v. Walsh*, 26 Ariz. 152, 222 P. 1046 (1924). It appears that in the instant case both parties below believed the entire assignment clause was subject to the franchisor's consent and that this consent could not be withheld unreasonably. In addition, the franchise agreement itself sets out the criterion upon which to judge whether consent was reasonably withheld: If the Ho-

gans are able to "provide active supervision," then the franchisor must accept them as assignees. *See Culligan Soft Water Service v. Culligan International Company*, 288 N.W.2d 213 (Minn.1979).

The franchisor adduced the following reasons for its refusal:

1. The volume of business at the Hogans' three other Dairy Queens had decreased since they bought them, with a resulting decrease in royalty payments to the franchisor;

2. The Hogans had been late in remitting royalty payments;

3. The Hogans were in arrears on their account with the supplier, a condition which could cause increases in the cost of supplies for the other Dairy Queens;

4. The Hogans' ownership of three Dairy Queen stores would impair their management of the new store; and

5. The franchisor's business relationship with the Hogans was already strained.
The Richters presented the following explanations:

1. The decrease in the Hogans' business was probably due to factors other than the Hogans' management abilities, since 12 of 15 Tucson franchises had suffered a decrease;

2. The default on royalty payments was unimportant, since it involved late charges of $4.07 and $6.21 on checks that arrived late in the mail at the franchisor's office in Douglas;

3. There was in fact no arrearage with the supplier;

4. The Hogans could easily manage one more store because the Richters spent only one hour a day in supervisory activities, and

5. The strained business relationship would not affect the assignment. In fact, the franchisor's president had approved Mr. Hogan as chairman of the area Dairy Queens' advertising committee.

We view the evidence in a light most favorable to sustaining the judgment and will affirm if there is any reasonable evidence to support it. *Jerger v. Rubin*, 106 Ariz. 114, 471 P.2d 726 (1970). Where the trial court's necessary finding is based on a conflict in the evidence, we will not disturb it. We believe the evidence listed above supports the trial court's finding that the franchisor's consent was unreasonably withheld.

The franchisor further argues, however, that its actions were reasonable as a matter of law. The cases it cites in support are not persuasive. *See e.g., Mowatt v. 1540 Lake Shore Drive Corporation*, 385 F.2d 135 (7th Cir. 1967) (an apartment cooperative's refusal to consent to a sublease and assignment of shares was reasonable, considering the purposes of the co-op, where the series of proposed assignees were involved with gangsters, had been bankrupt, were in debt, were "inclined to make angry scenes ... in public" or had been sued for fraud); *Seligson v. The Plum Tree, Inc.*, 361 F.Supp. 748 (D.C.E.D.Pa.1973) (although a franchisor has a right to consider the character, business ability and other qualities of proposed franchisees, no violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq., was shown); *Riggs v. Murdock*, 10 Ariz.App. 248, 458 P.2d 115 (1969) (a landlord's refusal to consent to a sublease was reasonable where the proposed subtenant had a poor payment record and "difficulties with the law"); *Grossmann v. Barney*, 359 S.W.2d 475 (Tex.Civ.App.1962) (a landlord's refusal to consent to a sublease was reasonable where the proposed subtenant intended to remodel the premises).

The evidence shows that the Hogans are reputable and experienced business persons with a good record of meeting their obligations. Considering all the circumstances, we decline to find as a matter of law that it was reasonable to withhold consent to the assignment. *See Haritas v. Goveia*, 345 Mass. 774, 188 N.E.2d 854 (1963).

Affirmed.

HOWARD, C. J., and BIRDSALL, J., concur.