872 P.2d 1240

**In the Matter of the APPEAL IN PIMA COUNTY JUVENILE SEVERANCE ACTION NO. S–113432.**

**No. 2 CA–JV 93–0003.**

Court of Appeals of Arizona, Division 2, Department B.

Sept. 9, 1993.

Review Denied May 17, 1994.

Ann M. Haralambie, P.C., by Ann M. Haralambie, Tucson, for minors.

Carmen Dolny, Tucson, for father.

## OPINION

ESPINOSA, Presiding Judge.

The natural father of four children, A., born May 3, 1978, B., born September 28, 1979, C., born December 29, 1986, and D., born May 13, 1988, appeals from the juvenile court's September 1, 1992 order severing his parental rights on the grounds of physical and emotional abuse under A.R.S. § 8–533(B)(2). We affirm for the reasons stated below.

## BACKGROUND OF THE CASE

The relationship between the father and the children's mother began during the late 1970s and was marked by turbulence and violence until it ended in February 1989. The couple never married. Shortly after they separated, the mother and the four children born during the relationship began living with the mother's husband, whom she married in May 1989. About two months earlier, in March, the father filed a petition in superior court seeking a determination of custody, visitation and support. Pursuant to a stipulation between the mother and father, the court entered an order in January 1990 granting custody of the children to the mother, giving the father visitation rights and requiring that the father pay child support. In February they agreed to allow the conciliation court to prepare a report regarding visitation. The report was completed in December 1990. Visitation became a problem, particularly after an incident in March 1990. While in their respective vehicles, the father chased the stepfather around a parking area, while daughters A. and B. were passengers in the stepfather's vehicle, for which the father was later convicted of misdemeanor endangerment.

On October 15, 1990, after receiving a letter from the conciliation court, the domestic relations court appointed counsel "to investigate and report to the court and take whatever steps may be necessary to protect the interests of the children." In December 1991, the children's attorney filed a petition in juvenile court to terminate the father's parental rights on behalf of the children, then ages 14, 12, 6 and 4; in April 1992 the mother filed a notice of joinder in the petition. Counsel's request that the juvenile court appoint her to represent the children in the severance proceeding was denied, as was her request that the parents be required to pay for her services.

The father moved to dismiss the petition on the ground that neither the children's attorney nor the children had standing to file it. The court denied the motion, finding that a child may properly file a petition pursuant to A.R.S. § 8–533, but that the children's attorney would have to seek payment for her services from the domestic relations court which initially appointed her. Following a three-day hearing, the court granted the petition, severing the father's rights under § 8–533(B)(2). The father has appealed and the children have cross-appealed, challenging the denial of court-appointed counsel and the order that they pay for a portion of the social study. The National Association of Counsel for Children requested permission to file an amicus brief in support of the cross-appeal, which we granted.

## THE FATHER'S APPEAL

We deny at the outset the children's motion to dismiss the father's appeal as untimely. While it is true that the juvenile court entered certain findings and severed the father's rights in its signed minute entry of August 17, 1992, that minute entry did not contain the requisite jurisdictional findings. A.R.S. § 8–538. Additionally, the juvenile court specified that the minute entry was not a final order and directed the children to submit an order, which they did. The appeal taken from that order was timely.

On appeal, the father challenges: (1) the juvenile court's denial of his motion to dismiss; (2) the failure to appoint separate counsel and guardians *ad litem* for the children; (3) the sufficiency of evidence showing mental abuse absent medical testimony as required by A.R.S. §§ 8–531 and 8–223(C)(2)(b); (4) the sufficiency of the evidence supporting the court's findings; and, (5) the admission of testimony regarding the father's prior bad acts and attempts to establish paternity.

## 1. *Children as petitioners.*

 Section 8–533(A) provides in pertinent part as follows:

Any person or agency that has a legitimate interest in the welfare of a child, *including, but not limited to,* a relative, a foster parent, a physician, the department of economic security, or a private licensed child welfare agency, may file a petition for the termination of the parent-child relationship alleging grounds contained in subsection B.

(Emphasis added.) The father argues that separate references to the child and the petitioner reflect a legislative intent that the two not be the same person. As further support for this contention, the father cites § 8–534, which sets forth the information that must be contained in a petition, and § 8–531(12), which defines "parties."

Although section 8–534 requires that the severance petition state the name, residence of the petitioner and additional information regarding the child, including the petitioner's relationship to the child, this does not necessarily mean they cannot be the same person. We also find unpersuasive the fact that § 8–531(12) defines "parties" as including the child and the petitioner. The import of this definition is that the child is always considered a party because the child is necessarily the focus of the proceeding, and the petitioner, by having commenced the proceeding, is likewise, by definition, a party. Moreover, the list of persons or agencies in § 8–533 who may file a severance petition is not, by its terms, all-inclusive. A child clearly is a person with a legitimate interest in his or her own welfare. We hold, therefore, that a child may be the petitioner in an action to sever the parental rights of that child's parents under § 8–531, *et seq.*

 The father's argument, that such a construction is contrary to provisions reflecting minority as a legal disability, is not well taken. Children may not marry, drive a car, join the armed services or consent to surgery without the consent of a parent or guardian because the legislature has determined these acts require a certain level of maturity and capacity. The same cannot be said of a severance proceeding. Maturity has nothing to do with a child's interest in the substance of such a proceeding. Indeed, as previously noted, the child is already considered a party in such a proceeding. A.R.S. § 8–531(12). We see no distinction between a child's capacity to be a party when the petition is brought by someone else and when the child has commenced it.

In any event, the mother joined in the petition and she is without question a person who may file a severance petition. We conclude, therefore, that the court had jurisdiction over the termination proceeding and correctly denied the motion to dismiss.

## 2. *Need for separate representation of the children.*

 The father next argues that the trial court should have appointed independent counsel or guardians *ad litem* "for any minor where, as here, the interests of the minors may differ from the interests of other minors, and where each child's best interests are not fully explored." First, the father has no standing to assert such conflicts here. *See Alexander v. Superior Court,* 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984) ("Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent.") If there were conflicts, it was for the children to assert them. Moreover, based on the record before us, we do not believe separate counsel or guardians *ad litem* were required. The father's rights were severed because of his abusive conduct and explosive personality, factors which had an impact on all the children. Their interests were the same. We do not believe the court was required to appoint for the children, as a guardian *ad litem,* an individual different from their counsel. *Cf. Pima County Juvenile Action No. S–828,* 135 Ariz. 181, 659 P.2d 1326 (App. 1982).

We further believe no conflict existed because the children's attorney was appointed by the domestic relations court in connection with visitation matters. The attorney's filing of the severance petition was the end result of her executing a specific directive of the court: "[T]o investigate and report to the

court and take whatever steps may be necessary to protect the interests of the children." In investigating the visitation situation, based on the reports of experts, the children's attorney concluded that not only would visitation not be in the children's best interests, *see* A.R.S. § 25–337(A), but neither would the continuation of the parent-child relationship.

### 3. *Sufficiency of evidence.*

■ The juvenile court severed the father's parental rights after it found that the father physically and emotionally abused the children, that there was abuse in the home and three of the children were beaten, and that the mother was beaten in front of the children. The father challenges the sufficiency of the evidence to support the order on various grounds. We will not disturb the juvenile court's order terminating parental rights unless there is no reasonable evidence to support the findings upon which that order is based. *Pima County Severance Action No. S–110,* 27 Ariz.App. 553, 556 P.2d 1156 (1976).

The father contends that the court erred when it found mental abuse as a ground for severance because the evidence on this issue was presented primarily through social workers and, with regard to C., the comments of a psychologist of one of the children as summarized in the conciliation court report, not a medical doctor or psychologist. He argues that even with such evidence, there was insufficient evidence of emotional or physical abuse.

■ First, the father has waived the issue regarding the competency of the social workers' testimony because it appears he did not object below or otherwise question on this basis the sufficiency of the evidence presented regarding the emotional abuse and its impact on the children. *See Richter v. Dairy Queen of Southern Arizona, Inc.,* 131 Ariz. 595, 643 P.2d 508 (App.1982). In any event, we believe that even though the evidence was presented primarily through social workers, it satisfied the statutory definition of emotional abuse.

Section 8–531(1) defines abuse as

... the infliction or allowing of physical injury ... or the infliction of or allowing another person to cause serious emotional damage as evidenced by severe anxiety, depression, withdrawal or aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist *pursuant to § 8–223....*

(Emphasis added.) Section 8–223, however, relates to taking children into temporary custody and provides, in relevant part, that where the reason for the emergency custody is emotional damage, the child must be examined by a medical doctor or psychologist. A.R.S. § 8–223(C)(2)(b). A common sense reading of the two statutes requires that we reject the father's argument that emotional abuse can only be shown where the child has been examined pursuant to and in accordance with § 8–223. Indeed, § 8–531 provides that the definitions therein apply "unless the context otherwise requires." It does here. There was no need in this case for the children to be taken out of the mother's home because the perpetrator of the violence, the father, was gone.

We believe that the legislative intent behind the definition of abuse is to make certain that expert testimony is presented which establishes the severity of the emotional damage. Such evidence was presented here. One of the social workers who testified is employed by El Dorado Psychological Association, possesses a master's degree in social work, and has had vast experience with physically and emotionally abused children. She stated that the two oldest children suffer from post-traumatic stress disorder, that the eldest daughter is terrified of the father, and that the eldest son has nightmares about him. This testimony was corroborated by a psychologist's report to the conciliation court. With respect to all the children, the social worker also testified about the severity of the impact of the emotional abuse in the home. While the conciliation court report appears to have been prepared by social workers, it, too, details the abuse and its impact upon the children.

■ We also reject the father's general challenge to the sufficiency of the evidence. In addition to the above, evidence was pre-

sented that the three oldest children were verbally and physically abused, that the father abused the mother in front of the children, and that he forced A. and B. to take care of the others, castigating them if anything went wrong. There was also the incident of the father chasing the stepfather with his car while A. and B. were passengers.

As for the youngest child, it was merely fortuitous that he was not exposed to the violent environment for as long as his siblings. The father was transferred to Flagstaff shortly after the child's birth and the parents separated in February 1989, when the child was less than a year old. Moreover, because of his age, the impact of the violence upon him appears to have been more difficult to ascertain than for the older children. According to the conciliation court report, although he appears to have been least affected, he "still must be considered at risk due to his young age, his close relationship with his siblings, and the perception of and potential for violence which still exist in his family system."

Evidence was also presented that the father broke a glass bottle over the mother's head while she held the youngest child, shattering glass over both of them. He was neglectful of the youngest child, causing him to hit his eye against the dash of a truck on one occasion, and on another, to fall out and hit his head on the street. When the child anticipated visiting his father, he would cry, at times experienced stomach aches, and would curl into a fetal position after the visits. Because he was subjected to a situation substantially similar to that of the other children and, given the impact upon them, we believe the evidence was sufficient as to this child.

We therefore conclude that with respect to all the children, sufficient evidence was presented to support the court's finding of either emotional or physical abuse. Accordingly, we reject the father's argument that the evidence does not support the court's finding that severance was in the children's best interests. The evidence not only showed that the father has caused the children to suffer emotional and physical harm, but also

that the children fear him and need the finality of severance. Their stepfather intends to adopt them, and the evidence showed the emotional support, security and stability which he has been providing to the entire family.. We agree that severance is in the best interests of these children.

*4. Evidence of father's prior bad acts.*

■ We also reject the father's argument that the court erred in allowing testimony regarding his alleged bad acts and attempts to establish paternity. First, as the children point out, the father now bases his objection on Ariz.R.Evid. 404(b), 17 A.R.S., but he relied on Rules 608(b) and 609 below. The issue is waived. *See Richter v. Dairy Queen of Southern Arizona, supra.* Moreover, even assuming it was preserved, the father's acts towards the mother and the children were the result of his violent temper and impulsive behavior. The evidence to which the father objected showed other impulsive and violent acts and was properly admitted to establish a pattern of behavior or behavioral propensity, which was particularly relevant in light of the father's contention that he had changed this pattern. *Cf. State v. Weatherbee,* 158 Ariz. 303, 762 P.2d 590 (App.1988); *Pima County Juvenile Action No. S–949,* 134 Ariz. 442, 657 P.2d 430 (App.1982).

Finally, we reject the father's argument that admission of his attempts to establish paternity constituted "punishment" by the court for his exercising a fundamental right. The record shows that the court was not punishing the father. He had made numerous statements to the children that he suspected, particularly with regard to A., that other men were the father, and that he would insist that they undergo blood testing even though A. and B. were fearful of blood tests and the mother did not contest paternity. This was further evidence of the father's emotional abuse of the children and was properly admitted.

## CHILDREN'S CROSS–APPEAL [1]

■ In February 1992, the juvenile court ordered the children and the father to split

1. The father has not filed a brief in response to the cross-appeal which, if there are debatable

the cost of the social study and denied the children's attorney's request that she be appointed to represent the children in the severance proceeding. In response to the children's motion to reconsider, the court stated that

> [w]ith regard to the issue of payments, since the matter of the filing of the petition arose by the way of the children's attorney appointed in a domestic relations case, the attorneys must look to the domestic relations court for payment since it is in furtherance of the children's attorney's duties in the domestic relations case that this action has been filed.

The children's cross-appeal challenges these rulings.

A.R.S. § 8–225 grants children the right to counsel in all proceedings under Title 8 and requires the appointment of counsel for indigent children. The children were entitled to and did have counsel in this proceeding. The trial court found that the children's attorney filed the severance petition in furtherance of her representation of them in the domestic relations court, and permitted her to represent the children. The only reason for formally appointing her was to ensure her compensation.

The children and the National Association of Counsel for Children contend that the juvenile court should have appointed counsel, and that the juvenile court is the only court that can and should order that she be compensated. We agree. Section 8–225(B) requires the appointment of counsel for indigent children,[2] regardless of the breadth of appointment by the domestic relations court under Title 25. Whether paid or not, however, the scope of any attorney's representation

in a domestic relations proceeding is limited. Section 25–321 provides that the court may, as opposed to shall, appoint an attorney to represent children with respect to support, custody and visitation. The provision further states that the court may order the payment of such fees and court costs against either or both parents. The only other provision relating to payment of attorneys' fees is § 25–324, which allows the court to order a party to pay the fees of another party to maintain or defend a proceeding under that chapter. A child, however, is not a party in a domestic relations proceeding.[3] In addition, Title 25 includes annulments, dissolutions, and child custody; it does not include severance proceedings. Therefore, neither § 25–321 nor § 25–324 provides the domestic relations court with jurisdiction to compensate counsel representing a child in a severance proceeding under Title 8.

■ We conclude that the juvenile court erred in failing to appoint counsel to represent the children. In light of the children's apparent indigency, we also find that the trial court abused its discretion in ordering them to pay a portion of the social study prepared pursuant to A.R.S. § 8–536.

## CONCLUSION

The juvenile court's order severing the father's parental rights to the four children is affirmed. The court's order denying the children's request for appointed counsel is reversed, and the court is directed to enter an order appointing the children's attorney as their counsel in this proceeding, who shall submit a request for fees and any recoverable costs to the juvenile court.

---

issues, constitutes a confession of error. *Thompson v. Thompson*, 126 Ariz. 129, 613 P.2d 289 (1980). In light of the importance of the issue raised and the fact that it is not one which would necessarily interest or affect the father, we address the merits of the cross-appeal.

2. The record before us does not contain a clear finding that the children are indigent. However, the motion for appointment states that they were entitled to appointed counsel. Their indigency has never been disputed and, based on the juvenile court's reason for denying the request, we can infer that the court did believe they were indigent.

3. The record is confusing as to the nature of the domestic relations proceeding involving the mother and the father. Though they were apparently never married, the minute entry appointing counsel is captioned, "In re the marriage of Bradley Nelson and Karen Miller." In his opening brief, the father claims he filed a petition in the domestic relations court seeking a determination of custody, visitation, and support. From the appeal briefs, it appears that the father also filed a paternity action pursuant to A.R.S. § 12–841, *et seq.*

Affirmed in part; reversed and remanded in part.

DRUKE, C.J., and HATHAWAY, J., concur.