877 P.2d 1323

**J.A.R., Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable J. Kenneth Mangum, a judge thereof, Respondent Judge,**

**E.C.G. and D.R., Real Parties in Interest.**

No. 1 CA–SA 94–0089.

Court of Appeals of Arizona, Division 1.

June 28, 1994.

Bruce W. Griffin, Phoenix, for petitioner.

David W. Curtis, Phoenix, for real party in interest E.C.G.

Jones, Skelton and Hochuli by A. Melvin McDonald, Phoenix, for real party in interest D.R.

Arizona Advocates for Children by David P. Arrow, Francis G. Fanning, Nancy Opre Logan and Margaret R. Tinsley, Tempe, for amicus curiae.

## OPINION

JACOBSON, Judge.

This special action arises from an order denying a minor child's motions to intervene and to be represented by counsel of his choice in his parents' domestic relation custody modification action. The following issues are raised:

1. Did the trial court abuse its discretion in denying the child's motion to intervene?

2. Did the trial court abuse its discretion under A.R.S. § 25–321 in denying the child's request for independent counsel?

3. Does the child have a right to independent counsel of his own choice, over the objection to that representation by one of his parents?

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner J.A.R. (the child) is the seven and a half-year old son of the real parties in interest, E.C.G. (mother) and D.R. (father), in the underlying custody modification proceeding.

On April 5, 1993, the trial court ordered joint custody of the child to his parents on a "week-on and week-off" shared custody schedule. In so doing, the court observed:

This case, perhaps more than any other which this Division has reviewed in the last nine months, presents a striking amalgam of contradictory qualities and shortcomings. Both parties love their son and have gone to extraordinary efforts to be able to parent him, including participating in several kidnappings and also in recovering the son through the use of a private army.

We too note that the abbreviated, partial record before this court is replete with substantial evidence of the parties' ongoing hostile struggle for custody of this child since his birth.[1]

Less than six months after the joint custody order, the mother filed a petition for modification of child custody, requesting that the court hear the petition less than one year after entry of the custody order on the basis that "there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." *See* A.R.S. § 25–332(L). The mother requested that the court modify custody by appointing her as his primary residential parent, and allow her to move with the child to Puerto Vallarta, Mexico, with visitation rights to the father.

The father responded and cross-petitioned for modification of custody, requesting the court to reinstate full custody in him with visitation rights to the mother, because of the "harmful negative changes which have occurred [to the child] since joint custody was awarded ...," attributable to the mother's "direct hostile acts designed to undermine, embarrass and destroy the development of her minor son...."

At some point, the mother requested appointment of an attorney for the child, to

---

1. For example, the factual allegations by the father in this case include the mother's criminal convictions for custodial interference after removing the child from the state in 1987 and 1988; the forcible abduction of both father and child to Mexico in 1989; and accusations that the mother is "programming the child's mind against his father." The father has also alleged that the mother has filed false reports about his business activities with various governmental agencies. The mother alleges the father's drug use in front of the child, and that the child fears the father and is being manipulated by him.

which the father did not initially object. On December 16, 1993, the court issued the following minute entry ruling:

> The Court has reviewed the Motion for Appointment of Attorney for the Child. No opposition has been received. It appears appropriate that the parties split the fees in proportion to their income as determined at the last hearing.
>
> IT IS ORDERED that the parties shall submit names by January 4, 1994, failing which the Court will appoint an attorney.

On December 20, 1993, the mother filed a "Petition for Emergency Hearing re: Appointment of Attorney for Minor Child," in which she alleged that the child had been seen by a "court approved psychiatrist/psychologist" who strongly urged that the court appoint independent counsel for the child, based on his belief that the child is "mature and competent enough to have input about his custody, visitation, and support," and based on the child's request to the doctor that he be allowed to have his own attorney.

At the hearing on this motion on January 7, 1994, the father's attorney objected on the grounds that ultimately the entire cost of separate counsel would be borne by the father and that, in any event, separate counsel would not add anything to the proceedings. The mother responded by pointing out that the court would benefit from an objective view, without influence by either party, in order to find the best interests of the child. When the court subsequently ruled, the following conversation took place among the parties and the court:

> THE COURT: Okay. With respect to the attorney for the son, I will deny that request. *I think the cost issue is an issue and the—I think that it's somewhat duplicative of the role that a psychologist would be playing.*
>
> [THE MOTHER:] Your Honor, this child has been requesting—he has begged me to get his own attorney for him so he's not torn between the two of us.
>
> THE COURT: I appreciate that, but I guess he didn't come up with it of his own idea.

> [THE MOTHER:] No. He asked what his alternatives were, and I said you have both parents in there pitching for you and you—or you have the opportunity to have somebody represent you. Okay. And I told him he could have somebody represent him if the court thought it was a good idea.
>
> THE COURT: Okay. Well, you can tell him that I think it's not a good idea in this case.
>
> [THE MOTHER:] Okay. *Even if one of the parties decides to pay for it?*
>
> THE COURT: *If you can pay for it, then, there's no opposition.*
>
> [THE MOTHER:] Okay. *If I can find a pro bono lawyer to do this, can I do this?*
>
> THE COURT: *Get a telephone conversation between the three of us, and we'll resolve it.*
>
> [THE MOTHER:] *Got it.*
>
> [FATHER'S COUNSEL:] Your Honor, . . . if there's going to be a court-appointed lawyer, I also want to have a voice in it to know who it is.
>
> THE COURT: Do you understand that he can object to somebody that he thinks is not impartial and so—. . . . And you need to be sure that you can convince [father's counsel] that whoever you obtain is not tainted.
>
> [THE MOTHER:] Okay.

(Emphasis added.)

On February 25, 1994, attorney Bruce W. Griffin filed a Notice of Appearance as retained attorney for the child. The father's counsel immediately objected, stating that he was not notified of the retention of counsel by the child, and that such action was in violation of the court's oral denial of the motion for appointment of counsel on January 7, 1994. The objection included an allegation that Mr. Griffin's retention was "nothing more than a sham by [the mother] to have a second voice at the [change of custody] hearing." On behalf of the child, attorney Griffin filed a response to the father's objection to notice of appearance, as well as a "Motion for Court Order Recognizing Minor Child's Counsel." In that pleading, he ar-

gued that the court's oral ruling on January 7 referred only to the court's restrictions on a court-appointed attorney, and did not preclude the child's private retention of his own counsel.

Attorney Griffin gave the following account of how he was hired to represent the child in this matter:

Attorney Griffin was initially approached in early February of 1994 by [the mother] of the minor child, who requested that he represent her minor child.... Attorney Griffin was reluctant because of the age of the child and the predictable inference by [the father] that he would be representing [the mother] and not the minor child. [The mother] gave attorney Griffin her account of the facts and he agreed to consider the representation. Subsequently, prior to agreeing to represent the minor child, attorney Griffin spoke with [the mother] and the minor child, with the minor child alone, and with psychologist Joseph Parham, Ph.D. who had met on several occasions with the minor child. Based in large part on the urging of Dr. Parham that the child needed representation, attorney Griffin agreed to represent the minor child.

Attorney Griffin is on the court approved list to provide representation by appointment for indigent persons, both children and adults, in the Juvenile Court. He has also represented juveniles as Petitioners in private dependency actions in that court. Based upon the fact that payment to appointed counsel by the Juvenile Court is $40.00 per hour, attorney Griffin agreed to represent the minor child for that amount. Attorney Griffin was retained on behalf of the minor child by [the] maternal grandmother ... who paid him a retainer of $400.00 and agreed to pay all costs and all future fees billed at the rate of $40.00 per hour. [The mother] was informed by attorney Griffin that, following his retention by the minor child, he would no longer correspond with her except as necessary in her capacity as a party. He further informed [the mother] that it would be in her best interests to retain her own counsel in which case attor-

ney Griffin would not communicate with her at all. Attorney Griffin advised [the grandmother] and the minor child, and both agreed, that he would represent the interests of [the child] and not the interests of either [the grandmother] or her daughter. Since his retention as the minor child's attorney on February 5, 1994, attorney Griffin has had no contact with [the grandmother]. Subsequent to the retention, [the grandmother] was contacted once by attorney Griffin's legal assistant ..., in order to inform her that the representation of her grandson would likely be difficult and time consuming and to obtain her reassurance that she would compensate attorney Griffin for his time spent on behalf of the minor child without regard to the amount of time ultimately required to effectuate the representation.

....

... On February 25, 1994, attorney Griffin filed his Notice of Appearance in this case. On March 1, 1994, he obtained the transcript of the January 7, 1994 hearing and determined to his own satisfaction that the court had not ruled that the minor child could not be represented by an attorney.

In support of the child's independent representation in this matter, attorney Griffin argued that, although each parent had retained the services of a psychologist to determine the child's best interests, neither psychologist had interviewed both parents. Additionally, because each parent had alleged that the other was "manipulating" the child to say what they each wanted him to say, both parents had a conflict between their own interests and those of the child. Furthermore, an independent investigation by an attorney representing only the child might result in a determination that it was not in the best interests of the child to remain with either parent, and reveal the need to file a dependency petition. Attorney Griffin alleged that, since his retention, he had discovered that Child Protective Services had "a voluminous file concerning the minor child" that might be relevant to the child's best interests, which had not been revealed to the court by either party in the modification action. Attorney Griffin concluded that, un-

der these particular circumstances, no one was acting as an advocate of the child.

In addition to the response to the father's objection, attorney Griffin also filed, on behalf of the child, a motion to intervene in the custody modification action, pursuant to Rule 24(a) and (b), Arizona Rules of Civil Procedure.

In response, the father's counsel argued that no showing of a need for independent counsel for the child had been made, and that attorney Griffin's representation of the child did nothing but give the mother "a second voice, a second bite at the same apple." Counsel for the mother had no objection to the child's independent representation, conceding, "there is a rational reason in this case to believe that the positions of the two parents are so diametrically opposed—and the history of the case ... is complex and very adversarial."

After taking the matter under advisement, the court issued the following ruling on "the issue of intervention or appearance by Attorney Bruce W. Griffin as counsel for the minor child":

> The Court does not dispute the independence of Mr. Griffin as an advocate for [the child]. However, the Court does not believe that a minor has an unlimited right to have an attorney enter an appearance on his behalf. The Court also determines that an additional advocate for the child is not required, as there is a court appointed mental health expert whose responsibility is to make recommendations that will be in the best interest of the child. Accordingly,

IT IS ORDERED denying Attorney Griffin's Motion to Intervene.

On March 24, 1994, attorney Griffin filed a petition for special action from this order on behalf of the child.[2] Arizona Advocates for Children[3] sought, and received, permission to file an amicus curiae brief in this special action.

## DISCUSSION

### Special Action Jurisdiction

■ As an initial matter, we note that an order denying a motion to intervene is a substantively appealable order.[4] *Bechtel v. Rose*, 150 Ariz. 68, 71, 722 P.2d 236, 239 (1986); *see also Maricopa County Juv. Action No. JS–7135*, 155 Ariz. 472, 747 P.2d 633 (App.1987) (grandparents appealed from denial of motion to intervene). However, our supreme court has held that the appealability of such an order should not preclude special action jurisdiction where the appeal is not an equally plain, speedy, or adequate remedy. *Bechtel*, 150 Ariz. at 71, 722 P.2d at 239; *see* Rule 1, Arizona Rules of Procedure for Special Actions. In *Bechtel*, the court afforded special action review of an order denying the grandmother's motion to intervene in a dependency action, even though that denial was an appealable order, for the following reasons:

> We must be mindful that we are dealing with the care and custody of a very young child and vigilant to protect his right to a suitable and speedy placement. "When the urgent and agonizing nature of the numerous proceedings affecting custody is

---

2. This court granted attorney Griffin's application for a stay of the custody hearing scheduled for March 25, 1994, under the following conditions:

> IT IS ORDERED staying the pending custody hearing and other proceedings in this matter in the absence of participation by the child through independent counsel. This order does not preclude the parties and superior court from working out a means of permitting discovery to go forward with the provisional participation of counsel for the child without prejudice to the ultimate determination of the merits of the special action.

3. Arizona Advocates for Children describes itself as "an *ad hoc* organization of highly experienced

attorneys who are concerned about the representation of children in the courts of this state ... who have practiced extensively before the juvenile and domestic relations courts, representing both parents and children, and who have actively participated—as members, lecturers and officers—in activities and training programs sponsored by the Maricopa County Bar Association Juvenile Practice Committee and Family Law Section, the State Bar Juvenile Law and Family Law Sections and the Arizona Council of Attorneys for Children."

4. Indeed, in this case, the court signed the written minute entry to meet the formal appealability requirements of Rule 58(d), Arizona Rules of Civil Procedure.

taken into consideration, with the resulting detriment to the [child] involved, it is apparent that the ultimate remedy available to petitioner by way of appeal is neither plain, speedy, nor adequate"....

Where the facts of a case so compel, we have not hesitated to grant extraordinary relief.... The facts of this case equally compel exercise of our jurisdiction.... An appeal might involve unconscionable delay, and even then "the very question before us now would be before us then, only months or perhaps years later." "It is clear that the propriety of granting the writ depends upon the facts of each case. The guiding principle must be our obligation to see that essential justice is done."

150 Ariz. at 71–72, 722 P.2d at 239–40 (citations omitted). *See also Silver v. Rose*, 135 Ariz. 339, 343, 661 P.2d 189, 193 (App.1982) (void custody order appropriately challenged by special action even though order was appealable); *Arizona Dep't of Economic Sec. v. Superior Court*, 173 Ariz. 26, 27, 839 P.2d 446, 447 (App.1992) (special action from order allowing intervention in dependency action involved "novel question that should be determined without waiting the length of time necessary for civil appeals to be decided").

■ Because, as in *Bechtel* and *Silver*, this case involves the custody placement of a young child, as well as a significant issue of law that may be decided as well now as in a later appeal that may involve unconscionable delay in resolving the child's placement, we accept special action jurisdiction.

### Denial of Motion to Intervene

■ Attorney Griffin argues that the trial court abused its discretion in denying the child's motion to intervene in this custody dispute, pursuant to the provisions of Rule 24, Arizona Rules of Civil Procedure.

In this case, the only argument offered in support of a statutory right of the child to intervene is the contention by the amicus curiae that the mandatory provisions of

A.R.S. § 8–225[5] apply to this custody proceeding brought under A.R.S. § 25–332 by application of the Uniform Child Custody Jurisdiction Act, A.R.S. §§ 8–401 *et seq.*, to all Title 25 custody proceedings. *See generally Lofts v. Superior Court*, 140 Ariz. 407, 411, 682 P.2d 412, 416 (1984) (provisions of UCCJA define "custody proceedings" to include actions for dissolution or modification of custody under Title 25). We reject this contention on several grounds. First, the application of the Title 8 provisions of the UCCJA to Title 25 custody proceedings is limited to the purpose of establishing jurisdiction. *See* A.R.S. § 25–331(A) (jurisdiction for child custody proceedings is governed by title 8, ch. 4, art. 1). Second, the legislature has enacted within Title 25 the following specific provision for discretionary appointment of counsel for children in domestic relations actions:

The court may appoint an attorney to represent the interests of a minor or dependent child with respect to his support, custody and visitation. The court may enter an order for costs, fees and disbursements in favor of the child's attorney. The order may be made against either or both parents.

A.R.S. § 25–321. This provision does not provide the domestic relations court with authority to compensate counsel of indigent children, as does A.R.S. § 8–225(B), *see Pima County Juv. Severance Action No. S–113432*, 178 Ariz. 288, 293–295, 872 P.2d 1240, 1245–47 (App.1993), another indication that A.R.S. § 8–225 was not intended to apply to Title 25 custody proceedings.

Third, if we construed A.R.S. § 8–225 to apply to all Title 25 proceedings that involved child custody, such a holding would eviscerate the explicit discretion given in A.R.S. § 25–321, and would require all children in divorce cases to have a court-appointed attorney. Such a result was obviously not intended by the legislature in enacting A.R.S. § 25–321. *See, e.g., Tischendorf v. Tischendorf*, 321 N.W.2d 405, 409 n. 2 (Minn.1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1426, 75

5. A.R.S. § 8–225 provides:
(A) In all proceedings conducted pursuant to this title and the rules of procedure for the

juvenile court, a child has the right to be represented by counsel.

L.Ed.2d 787 (1983) (rejecting application of rule requiring juvenile to have appointed guardian to dissolution proceedings because "[t]he application of this rule to dissolution proceedings whenever visitation is an issue would require all children to have court-appointed guardians. The rule was not intended to have such a result").

Fourth, we note that the mandatory requirement in A.R.S. § 8–225 that a child be represented by counsel is limited to only those cases "conducted pursuant to ... the rules of procedure for the juvenile court." The juvenile court rules do not apply to this case. We therefore reject the argument that the child has a statutory right to court-appointed counsel in this custody modification proceeding.

■ The next inquiry under Rule 24(a) intervention of right is whether the child has an interest in the proceeding and is so situated that, as a practical matter, the disposition would "impair or impede" the child's ability to protect that interest. The parties before us do not dispute, and we conclude, that the child has an "interest" in the outcome of the modification action, although he is not a named party. Indeed, the child's custody is the only subject involved in the litigation between his parents. Other courts too have recognized the nature of the child's interest in such a proceeding, even when the child is not recognized as a "party" to the dispute.[6] *See, e.g., Leigh v. Aiken,* 54 Ala.App. 620, 311 So.2d 444, 446 (1975) (even though child is not a party to custody modification proceeding, "he may be said to have an interest therein"); *Verrocchio v. Verrocchio,* 16 Va. App. 314, 429 S.E.2d 482, 485 (1993) (although child is "technically not a party to the custody proceeding, the child is the subject of the custody hearing"); *Veazey v. Veazey,*

560 P.2d 382, 386 (Alaska 1977) (child is the person most interested in the outcome of a custody dispute).

■ Although we acknowledge the child's "interest" in a domestic relations proceeding regarding his custody, we do not agree that this interest mandates the child's intervention under the provisions of Rule 24(a) or (b). Indeed, we find Rule 24 inapplicable to the child in the current proceeding because the domestic relations court is otherwise statutorily vested with discretionary alternative methods to protect the child's rights and interest in the outcome.

■ For example, in determining issues of child custody, the trial court is compelled to base its determinations on the best interests of the child. A.R.S. § 25–332(A). One of the factors the court must consider is "[t]he wishes of the child as to the custodian." A.R.S. § 25–332(A)(2). The wishes of the child of a sufficient age to form an intelligent custody preference are persuasive, although not controlling. *Ward v. Ward,* 88 Ariz. 130, 353 P.2d 895, *modified on other grounds,* 88 Ariz. 285, 356 P.2d 30 (1960); *see also Bailey v. Bailey,* 3 Ariz.App. 138, 141, 412 P.2d 480, 483 (1966) (child's preference is important but not necessarily controlling in modifying child custody provisions of divorce decree). The court has statutory discretion to "interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation." A.R.S. § 25–334(A). Also, as previously noted, the court has statutory discretion to appoint an independent attorney for the child to protect his or her interests in support, custody, or visitation. A.R.S. § 25–321. Under these circumstances, even though the child is not a "party" in the traditional sense, because the child is otherwise able to participate and the child's inter-

---

6. A minor child has been recognized as a "party" to a dependency or termination hearing under Title 8. *Klahr v. Court of Appeals,* 134 Ariz. 67, 68–69, 654 P.2d 1, 2–3 (1982). A child has also been recognized as a "party" in adoption and termination proceedings, which cannot involve deprivation of his or her interests in the parental relationship without due process. *See, e.g., In re D.,* 24 Or.App. 601, 547 P.2d 175, *cert. denied,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976). In Arizona, however, a child is not a party in a domestic relations proceeding under

Title 25, although our courts have recognized that a minor child, in spite of his or her minority, "clearly is a person with a legitimate interest in his or her own welfare." *Pima County Juv. Action No. S–113432,* 178 Ariz. at 291, 293–95, 872 P.2d at 1243, 1245–47. We have not found any cases in which a child has been considered, as a matter of right, to be a named "party" in a domestic relations custody dispute between his own parents. *But see In re Hammill,* 225 Mont. 263, 732 P.2d 403, 408 (1987) (child allowed to appeal from custody order).

ests are protected by these alternative means, the lack of the child's intervention will not "as a practical matter impair or impede [the child's] ability to protect that interest." *See* Rule 24(a). Thus, we conclude, because the child had no absolute right to intervene in these proceedings, the trial court did not abuse its discretion in denying attorney Griffin's motion to intervene.

### Refusal to Recognize Appearance of Child's Retained Attorney

1. *Child's Right to an Independent Attorney*

■ We next consider whether the trial court abused its discretion in refusing to allow the child to be represented by an independent attorney.

Although the court accepted the "independence" of attorney Griffin's representation of the child, it concluded that an additional advocate for the child was unnecessary because "there is a court appointed mental health expert whose responsibility is to make recommendations that will be in the best interest of the child." We find this ruling to be erroneous under the facts of this case.

■ First, we note the record indicates that the parties dispute whether the psychologist is either "court-appointed" or neutral in this case.[7] Regardless of these disputed facts, however, we would not find the participation of a mental health expert sufficient to represent and advocate this child's best interests in this proceeding. Although a court-appointed mental health expert might provide some helpful, neutral information beyond the strategic and biased allegations that each parent has made against each other in this hotly contested custody fight, a mental health professional, whether court-appointed or privately retained, simply cannot assure that the child is represented either before or during trial, and cannot assure that all relevant information is properly investigated and introduced in an admissible fashion at trial, or that irrelevant or biased information is either kept out or cross-examined. *See, e.g., Kimmons v. Kimmons,* 1 Ark.App. 63, 613 S.W.2d 110, 113–14 (1981) (participation of neutral social services agency was inadequate to represent child). We fail to see how the mental health expert's proposed psychological evaluation could adequately represent the child's interests in this custody hearing, and we find the trial court's finding regarding the adequacy of that representation to be legally erroneous.

■ Second, under the specific facts of this case, where the hostile contentions of each parent toward the other, both alleging the child's endangerment, create a strong possibility that their interests will conflict with his, we find that the court abused its discretion in failing to appoint an independent attorney for the child under A.R.S. § 25–321. In other jurisdictions, some courts have concluded that it constitutes an abuse of discretion to fail to allow a child to have independent representation when allegations are made by the parents of abuse, neglect, or other conduct that endangers the child. *See, e.g., G.S. v. T.S.,* 23 Conn.App. 509, 582 A.2d 467, 470 (1990) ("[w]hen custody is contested and there are allegations of neglect and abuse, children have a unique need to be represented by counsel who will advocate their best interests"); *Levitt v. Levitt,* 79 Md.App. 394, 556 A.2d 1162 (1989), *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989) (separate attorney for 5–year old child was required in change of custody proceeding where parents presented only their own interests in custody); *Yontef v. Yontef,* 185 Conn. 275, 440 A.2d 899, 908 (1981) (independent counsel must be appointed whenever custody is seriously contested). We believe this factor is an important consideration in deciding whether a child should have independent counsel in a contested custody case.

---

7. Apparently, Ron Lavitt, Ph.D., was appointed by the court in the previous modification proceeding. The court did not, however, follow his recommendation that the father be granted sole custody, but instead issued an order for joint custody. In the present proceeding, the mother contends that Dr. Lavitt is now the father's retained expert, and that the court has not appointed a mental health expert. The record also indicates that neither Dr. Lavitt nor the mother's retained psychologist, Joseph Parham, Ph.D., has interviewed both parents; each has conferred only with their respective client and with the child.

In the analogous context of juvenile proceedings, where the child has a right to counsel under A.R.S. § 8–225, our supreme court has concluded that, although a child need not have independent counsel in every matter involving his or her placement, such independent counsel may be required to serve "an identifiable purpose such as advocating the child's position in the dispute or ensuring that the record be as complete and accurate as possible...." *Yavapai County Juv. Action No. J–8545*, 140 Ariz. 10, 16, 680 P.2d 146, 152 (1984); *see also In re D.*, 547 P.2d at 179–80 (due process does not require independent counsel in every termination case; trial court must determine on a case-by-case basis if (1) attorney can serve as an advocate for the child, based on the child's maturity and ability to communicate, and (2) attorney can ensure that the record before trial court is as complete and accurate as possible); *In re Guardianship of Gullette*, 173 Mont. 132, 566 P.2d 396, 400 (1977) (applying reasoning of *In re D.* to a contested guardianship proceeding); *In re Fish*, 174 Mont. 201, 569 P.2d 924, 928 (1977) (where parents' interests conflict with each other's and potentially conflict with those of the child, child must be afforded independent counsel).

We believe the factors articulated in *Yavapai County Juvenile Action No. 8545* and *In re D.* are also important considerations in determining when a court should exercise its discretion under A.R.S. § 25–321 to appoint independent counsel for a child in a contested custody case, particularly when allegations of abuse or neglect have been made as the basis for a modification petition.

In sum, then, we have found the following non-exclusive factors relevant in ruling on this particular child's request for independent counsel under the discretionary provisions of A.R.S. § 25–321:

(1) the parents have each alleged that the other has placed the child's welfare in danger by abuse or neglect, *see* A.R.S. § 25–332(L), and these allegations place the interests of the parents in potential conflict with the best interests of the child;

(2) based on the particular circumstances of this case, which include undisputed evidence of the child's maturity and ability to communicate his circumstances and wishes, an independent attorney would be able and willing to serve as an effective advocate for the child; and

(3) an independent attorney for the child could help ensure that the record before the trial court is more accurate and complete.

First, we have previously noted that this case involves accusations by both parents of the other's abuse or neglect; indeed, those allegations were a prerequisite to obtaining a modification hearing on the cross-petitions less than one year from the prior custody order. *See* A.R.S. § 25–332(L).[8] We do not imply by that observation in this case, however, that such a factor is a necessary prerequisite to the discretionary appointment of an attorney for the child under A.R.S. § 25–321. Rather, we point out only that the potential conflict of interest that arises between the interests of a parent and a child in a case involving any allegation of endangerment of the child may weigh strongly in favor of appointment of independent counsel for the child.

Second, the evidence in the record supports both the child's ability to articulate his position and preferences and attorney Griffin's qualifications, ability, and willingness to act as an advocate for the child in a way that a court-appointed psychologist or other mental health expert could not. Again, this observation does not imply that in every case in which counsel is appointed under discretion of A.R.S. § 25–321 the child must be mature enough to have preferences as to custody or to communicate them. However, in this case, this particular factor, along with the other circumstances, weighs in favor of appointing independent counsel for the child.

8. A.R.S. § 12–332(L) provides:
 No motion to modify a custody decree may be made earlier than one year after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously the child's physical, mental, moral or emotional health....

Third, we note that attorney Griffin's short participation in the case brought to the court's attention relevant facts that the parties' counsel had not. Thus, it is clear on this record that his participation in this matter would ensure a more complete and accurate factual record upon which the court could make a custody determination.

Under these specific facts, we hold that the trial court abused its discretion under A.R.S. § 25–321 in refusing to allow the child to have independent counsel in this custody modification proceeding. We do not, by this holding, imply that independent counsel is required for every child whose parents contest custody, nor do we take away the discretion vested in the trial court under A.R.S. § 25–321 to afford counsel to children in domestic relations cases when one or more of these factors is not present. Rather, our holding arises from the facts before us, in which we have identified multiple factors that support the child's independent representation, and only inadequate or unfounded arguments against such representation.

 We emphasize that a trial court has discretion, on a case-by-case basis, to make independent counsel determinations based on the specific facts before it. In doing so we direct attention to cases where courts have found no abuse of discretion in failing to afford the child independent counsel or · guardian ad litem when some of these factors are missing. *See, e.g., Osmun v. Osmun,* 842 S.W.2d 932, 935 (Mo.App.1992) (no abuse of discretion in refusing to appoint guardian ad litem where no abuse or neglect of child is asserted in custody dispute); *Parrillo v. Parrillo,* 495 A.2d 683, 686 (R.I.1985) (father failed to show basis for appointment of guardian ad litem for 3–year old children in modification . proceeding where no evidence indicated any danger to children in current custody placement); *Cyr v. Cyr,* 432 A.2d 793, 798 (Me.1981) (parents in custody dispute had no incentive to minimize or conceal facts and court was provided with adequate neutral information, so no guardian need be appointed for children); *In re Richard H.,* 234 Cal.App.3d 1351, 285 Cal.Rptr. 917, 925–27 (1991) (actual conflict of interest between parent and child must appear before appoint-

ment of separate counsel is required; also, father failed to suggest factual matters that independent counsel might have presented); *Wildermuth v. Wildermuth,* 14 Wash.App. 442, 542 P.2d 463, 466 (1975) (no abuse of discretion in failing to appoint counsel for children in custody dispute where all relevant factors were developed by the parties); *Pisch v. Pisch,* 7 Conn.App. 720, 510 A.2d 455, 459 (1986) (young age of child and last-minute request for counsel were factors supporting trial court's denial of child's request for counsel in dissolution action). However, conversely, we would not necessarily find an abuse of discretion in a court's appointment of independent counsel for a child in the absence of one or more of these factors. *See, e.g., Wildermuth,* 542 P.2d at 466–67 (although court was not *required* to appoint counsel for children under circumstances of the case, court was not *precluded* from such an appointment if it is either "requested or seems appropriate").

As a final comment to our conclusion that this particular child is in need of independent representation of his best interests in the context of this custody dispute, we quote the following summary of a holding by the Maryland Court of Appeals in a similar case:

> Five-year old Chad needs (1) parents who put his needs ahead of their own. He also needs (2) a lawyer. He has none of these. We are not able to provide him with the first, but we will furnish him the second.

*Levitt,* 556 A.2d at 1162. Hopefully, the participation of independent counsel for the child will assist the trial court in making the difficult determination of a custody arrangement under these unusually confrontational circumstances that will be in the best interests of this child.

## 2. *Child's Right to Retained Attorney of Choice*

 Having concluded that the child is entitled to have independent counsel to represent his interests in this custody dispute, we next address the question whether he is entitled to retain attorney Griffin as his attorney of choice despite his father's objections to that representation.

In a criminal context, Division Two of this court has recognized the due process right of a juvenile, through the right-to-counsel provisions of the federal and state constitutions, to "appear and defend with retained counsel of one's own choice." *Pipkins v. Helm*, 132 Ariz. 237, 239, 644 P.2d 1323, 1325 (App.1982). Other jurisdictions have recognized the right of a juvenile in noncriminal proceedings to retain an attorney of the juvenile's choice. For example, the Alaska Supreme Court rejected an argument that parents are entitled to choose their children's attorney simply because they would be liable for the expenses. *Wagstaff v. Superior Court*, 535 P.2d 1220 (Alaska 1975). In *Wagstaff*, the court also rejected the argument that the minor child was incapable, because of his age, of contracting for services, and held that the child may retain the attorney of his choice. Similarly, a California court held that, in a dependency proceeding at which a child must, under California law, be represented by counsel, the court must allow a request for substitution of counsel to the child's retained attorney if the court is "satisfied that the minor is competent to select counsel and that counsel is prepared to meet the obligations imposed." *Akkiko M. v. Superior Court*, 163 Cal.App.3d 525, 209 Cal.Rptr. 568, 571 (1985). The court qualified its holding as follows:

> Of course, as a first step, counsel has a duty to determine whether a minor who seeks his or her services is capable of selecting an attorney. But the court has the duty to determine whether substitution of "retained" counsel for counsel appointed ... is required. In making that determination, the court must consider the minor's capacity to select counsel as well as the competence of counsel. The mandate that the court take "whatever appropriate action is necessary to fully protect the interests of the child" ... is broad enough to permit court intervention when the minor

has purported to exercise the right to select counsel of his or her "own choice." *Id.* Factors a court should consider in assessing the child's competence include a determination whether the child was "coerced or manipulated" into the decision to retain a certain counsel. *In re A.W.*, 248 Ill.App.3d 971, 188 Ill.Dec. 159, 163, 618 N.E.2d 729, 733 (1993). If the child's chosen representative is too closely aligned to one of the other parties, the court should order other representation. *See, e.g., Custody of a Minor*, 21 Mass.App.Ct. 985, 489 N.E.2d 1266, 1268 (1986) (abuse of discretion to appoint paternal grandparents as guardians ad litem for child in custody dispute because their "close identification with the father ... makes it inadvisable that they function in formal roles as investigators and reporters of facts to the court").

The question whether the child is entitled to attorney of choice is different from whether the child is entitled to independent counsel. A court generally has less discretion to interfere with the choice of retained counsel, and is limited to considerations whether the child's attorney is acting independently and whether the child is competent to make a choice of counsel.

In this case, both factors seem to weigh in favor of attorney Griffin's representation of the child. First, the court found that attorney Griffin was acting independently for the child. The attorney's own avowal of how he was retained refuted the father's allegation that his representation of the child is a "sham." In addition, Dr. Joseph Parham's affidavit[9] attested to the truthfulness of the child's affidavit and to the child's mental and emotional competence to be heard in this action. In contrast, the father produced no evidence to establish his allegation that the child's representation by this attorney is a

---

9. Dr. Parham's affidavit stated, in relevant part:
 I have read the affidavit of [the child], dated March 6, 1994. The statements contained in it are the same as he revealed to me during therapy. Based on my assessment and experience with him I believe he is telling the truth.
 Considering the interview, assessment, and test results, [the child] exhibits the maturity and mental understanding in the average to very superior range of intelligence and verbal IQ. Therefore, it is in my expert opinion that [the child] is extremely intelligent, emotionally capable, and competent enough to be represented by an attorney of his choosing.

"sham" arranged by the mother.[10]

 The father's only remaining argument in this court against this representation is that a seven-year old child is incapable of choosing and utilizing his own attorney as a matter of law. We reject that contention on this record based on the specific evidence regarding this particular child. We also point out that our Ethical Rules recognize that a valid attorney-client relationship can exist between an attorney and a young child. *See* ER 1.14, Rule 42, Rules of the Arizona Supreme Court. The comment to ER 1.14 makes the following observation about young clients in custody proceedings:

> The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor ..., however, maintaining the ordinary client-lawyer relationship may not be possible in all respects.... Nevertheless, a client lacking legal competence often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client's own well-being. *Furthermore, to an increasing extent the law recognizes intermediate degrees of competence. For example, children as young as five or six years of age, and certainly those of ten or twelve, are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody.*

*Id.* (emphasis added).

On the basis of the record before us, we would normally find no impediment to attorney Griffin's representation of the child as the child's counsel of choice. The trial court determined that attorney Griffin was acting independently and evidence of the child's level of competence is uncontested on the record. Under these circumstances, we would find no ground to deny that representation, based on the limited partial record before us in this special action proceeding. However,

we recognize that the trial court refused to appoint counsel in this matter and therefore may not have delved sufficiently into the factors we have outlined, which should be considered in determining whether the child's choice of independent counsel is proper.

We therefore direct the trial court to appoint counsel for the child in accordance with the principles of this decision. If the court finds that attorney Griffin is an appropriate choice of counsel given his participation to this point in the litigation, and based on the factors we have herein acknowledged, the court should appoint him as counsel for the child, with expenses to be reimbursed by either or both parents, in accordance with the provisions of A.R.S. § 25-321. The father's objection to the cost of independent counsel shall not be sufficient to prevent appointment. If the court finds, after a hearing requested by either parent, that attorney Griffin should not represent the child, the reasons for that decision should be stated on the record and alternative counsel should be appointed.

For the foregoing reasons, we accept special action jurisdiction and grant relief in part. We do not disturb the trial court's order denying the child's motion to intervene; however, the order denying the child's motion for counsel is reversed, and this matter is remanded for further proceedings in accordance with this decision.

NOYES and FIDEL, JJ., concur.

---

10. The father has included in his pleadings in this court several appended exhibits that we consider inadmissible because we have no indication in this record that they were presented to the trial court, nor is any foundation provided for them. These include a tape recording of phone conversations between the mother and the child and an unsigned "Collection Agreement and Personal Service Lien," purported to be between the mother and Dr. Parham. We therefore do not consider these exhibits as evidence in this matter.