NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.A.

No. 1 CA-JV 24-0078

FILED 03-27-2028

Appeal from the Superior Court in Maricopa County
No. JD39499
The Honorable Adele Ponce, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By Ingeet P. Pandya
*Counsel for Appellee DCS*

Law Office of Christina Lopez, Phoenix
By Christina Lopez
*Guardian Ad Litem for Appellee Child*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Child*

---

**MEMORANDUM DECISION**

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Michael J. Brown and Judge Paul J. McMurdie joined.

---

**F O S T E R**, Judge:

¶1 Jason Arnold ("Father") appeals the juvenile court's order terminating his parental rights as to his child, A.A., on the grounds of neglect and out-of-home placement. For the reasons that follow, this Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2 In May 2022, while sleeping in the bed of a truck covered by a camper shell, seven-year-old A.A. sustained a gunshot wound to her hand. A.A.'s parents provided conflicting information as to how the events occurred. Father reported to the police that he heard yelling while he was in the bed of the truck with A.A. At the time, Mother and another male, whom Father had only known for six months, were in the front of the truck. In receiving care for her hand, medical staff discovered bruises and abrasions over A.A.'s body. Based on concerns for A.A.'s safety, the Department of Child Safety (the "Department") obtained temporary custody of A.A. That same month, the Department filed a dependency petition against Mother[1] and Father[2]. The petition alleged Father was unable to parent due to an unstable living environment. It also alleged: (1) A.A had developmental issues, including speech and language delays; (2) A.A. had missed 72 days of school in the 2021–22 academic year; and (3) Father had failed to enroll A.A. in Division of Developmental Disabilities ("DDD") services, recommended in 2020.

---

[1] Mother pled no contest at the severance hearing. The court terminated Mother's parental rights, and she is not a party to this appeal. For that reason, details about her case are not included.

[2] Because A.A. is an Indian child pursuant to the Indian Child Welfare Act ("ICWA"), ICWA applies. An ICWA caseworker and the tribe participated throughout the dependency proceeding.

**¶3** At the dependency hearing in October 2022, Father pled no contest. The juvenile court found A.A. dependent as to Father due to unstable housing and ineffective "parental care and control[,] specifically failing to provide for the medical and educational needs of the child." Later, the Department petitioned to terminate Father's parental rights, alleging (1) neglect or failure to protect from neglect; (2) abuse or failure to protect from abuse; and (3) out-of-home placement longer than fifteen months. Following an evidentiary hearing, the juvenile court terminated Father's parental rights in April 2024 on the grounds of (1) neglect and (2) out-of-home placement but did not find the Department provided clear and convincing evidence as to abuse.

**¶4** Father timely appealed. Several months after Father's appeal, this Court ordered a stay pursuant to Administrative Order 2024-08 due to disclosure issues relating to the Department's records. During the stay, the Department provided previously undisclosed documents that the juvenile court found were not material to its previous decision to terminate Father's parental rights. The stay in Father's appeal has been lifted, and this Court has jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶5** Father raises four issues on appeal. Father first argues the juvenile court erred by denying A.A.'s due process rights, and as a result, it interfered with his due process rights to a fair trial. Father next contends the court erred by terminating his parental rights due to neglect. Father also argues the court erred by terminating his parental rights on the fifteen months' out-of-home placement grounds. Lastly, Father claims the court erred by finding termination was in A.A.'s best interests.

## I. Father's Standing.

**¶6** Father contends A.A. received ineffective assistance of counsel when A.A.'s counsel: (1) "lightly objected" to Father's parental rights being terminated; (2) "failed to notify the juvenile court if [counsel] was using substituted judgment"; (3) failed to "ask any witnesses about A.A.'s visits with [Father]"; and (4) failed to remedy the conflict of interest: the same office, which alleged provided ineffective assistance of counsel, representing A.A. at the trial and appellate level. In response, A.A.'s counsel and the Department claim Father does not have standing to raise A.A.'s due process rights. Because standing is a threshold matter, this Court addresses that issue first.

**¶7**        Under the Arizona Constitution, a party is not required "to assert an actual 'case or controversy' in order to establish standing." *Bennett v. Brownlow*, 211 Ariz. 193, 195, ¶ 14 (2005) (citations omitted). But "[a]s a matter of sound judicial policy . . . persons seeking redress in Arizona courts must first establish standing. *Id.* (citation omitted). Ensuring parties have "standing is prudential and constitutes an exercise of judicial restraint." *Id.* (citation omitted). This Court reviews standing *de novo. Karbal v. Ariz. Dep't of Revenue*, 215 Ariz. 114, 116, ¶ 6 (App. 2007). Standing to protect a third person's constitutional rights requires the claimant to establish (1) "a substantial relationship to the third person"; (2) "the third person [is] unable to assert the constitutional right on [her] own behalf"; and (3) "the failure to grant the party standing must result in a dilution of the third person's constitutional rights." *State v. B Bar Enters., Inc.*, 133 Ariz. 99, 101 n.2 (1982) (citation omitted); *see also Kerr v. Killian*, 197 Ariz. 213, 217, ¶ 16 (App. 2000); *Heather A. v. Dep't of Child Safety*, 1 CA-JV 21-0315, 2022 WL 964084, at *2, ¶ 9 (Ariz. App. Mar. 31, 2022) (mem. decision). Generally, a court's finding for lack of standing permits a court to decline jurisdiction. *Karbal*, 215 Ariz. at 116, ¶ 7.

**¶8**        While a parent's right to custody of his child is fundamental, it "is not absolute." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). Though Father may have a substantial relationship with A.A. as her biological parent, Father does not establish that A.A. is unable to assert her rights because A.A. is a represented party to the case and in the care of the Department. *See Pima Cnty. Juv. Severance Action No. S-113432*, 178 Ariz. 288, 291 (App. 1993) (a child may assert conflicts in the trial if conflicts exist and the parent lacks standing to assert them); *see also Heather A.*, 1 CA-JV 21-0315, at *2, ¶ 9 (a parent lacked standing when children were "represented by counsel who can assert their constitutional rights"); *Alexander v. Superior Court*, 141 Ariz. 157, 161 (1984) ("Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent."). Instead, A.A.'s attorney stated on the record that he consulted with her and that "[s]he want[ed] to stay where she's safe." Father has not established standing on behalf of A.A., and therefore, this Court declines to review Father's claim relating to A.A.'s attorney's conduct.

## II.    Severance Findings.

**¶9**        A juvenile court may terminate parental "rights if it finds by clear and convincing evidence that at least one of the statutory factors for termination exists [in § 8-533(B)] and finds by a preponderance of the evidence that termination is in the child's best interests." *Brionna J. v. Dep't*

*of Child Safety*, 255 Ariz. 471, 477, ¶ 1 (2023); *see also* A.R.S. § 8-533(B); *Michael J.*, 196 Ariz. at 249, ¶ 12.

**¶10** This Court "accept[s] the juvenile court's findings of fact if reasonable evidence and inferences support them and will affirm a severance order unless it is clearly erroneous." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (cleaned up). However, "legal issues requiring the interpretation and application of § 8-533" are reviewed *de novo. Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 580, ¶ 10 (2021) (cleaned up). Though Father challenges the court's findings on neglect and the out-of-home placement, if this Court concludes that clear and convincing evidence supports one of the grounds on which the juvenile court ordered termination, it is unnecessary to address arguments relating to the other grounds. *See Michael J.*, 196 Ariz. at 251, ¶ 27; *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

**¶11** If the Department establishes that a child has been in an out-of-home placement for fifteen months or longer, this Court must affirm a juvenile court's finding to terminate the parent-child relationship. A.R.S. § 8-533(B)(8)(c); *see also Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) ("When the statutory grounds for termination are challenged, [this Court] will affirm a termination order unless . . . no one could reasonably find the evidence supporting statutory grounds for termination to be clear and convincing." (cleaned up)). Specifically, the Department must establish (1) "[t]he child has been in an out-of-home placement for [at least] fifteen [cumulative] months . . . pursuant to a court order"; (2) the parent has not satisfied the condition that caused the out-of-home placement; and (3) "there is a substantial likelihood" the parent is not capable of providing the required "parental care and control in the near future." A.R.S. § 8-533(B)(8)(c); *see also Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 25 (App. 2019).

**¶12** Before termination for out-of-home placement, the juvenile court must consider whether the Department's statutory obligation to make diligent and active efforts in providing appropriate reunification services were satisfied. *See Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 333, ¶ 3 (2009); *see also Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 421, ¶ 26 n.15 (App. 2011). Father does not contest, and therefore concedes, the Department made diligent and active efforts to reunify and that he failed to remedy the circumstances that caused A.A. to remain in an out-of-home placement for more than fifteen cumulative months. *See In re Z.L.*, 256 Ariz. 138, 143, ¶ 19 (App. 2023).

¶13 Here, the juvenile court found the Department satisfied the statutory requirements for out-of-home placement by clear and convincing evidence because A.A. had been in placement since "on or about May 18, 2022," which exceeded the cumulative fifteen-month period. This finding was based on testimony from the Department's case manager that the case had been open for twenty-one months and A.A. had been in foster care for those twenty-one months.

¶14 Additionally, at the time of the termination hearing, Father was unemployed, struggling with housing and had not seen A.A. since December 2023. Father testified he needed more time to demonstrate his ability to protect A.A. and conceded that "after about [fifteen] months or more, [he was] not in a position to provide stable housing." Father informed the court at the severance hearing he did not provide an address because he had been "staying in hotels or sleeping on the streets" since his eviction in April 2022, a month before A.A.'s removal. Although Father testified he had seasonal employment at some point, his employment was unstable and he did not have any future employment arranged.

¶15 Lastly, while the Department's case manager testified Father had completed a substance-abuse-awareness program and there were positive interactions between A.A. and Father during supervised visitation, Father did not make the behavioral changes needed to "mitigate the safety concerns." Specifically, Father was not "consistent with the services provided," including drug testing, attending parenting and family courses and he "closed out" of certain programs due to lack of engagement. Other testimony depicted Father's inability to exercise parental care and control, including testing positive for methamphetamine in November 2023 and separating from Mother, whom he knew had been abusing drugs, only a week before the severance hearing.

¶16 The juvenile court found Father received services from the Department that were "designed to preserve the family relationship," including parental and family resources, drug testing, substance abuse treatment and transportation to participate in services. The case manager testified that despite these services and transportation accessibility, Father inconsistently participated in those programs.

¶17 Additionally, the juvenile court acknowledged A.A.'s placement was not ICWA compliant. Still, it found the Department did provide active efforts to identify possible relative or kinship placement for A.A. The ICWA case worker agreed the Department provided "active efforts" for A.A. Based on this record, the juvenile court did not err in

finding the Department established the out-of-home placement provisions supporting termination.

### III.    Best Interests Findings.

**¶18**        Lastly, Father argues the juvenile court erred in finding termination was in A.A.'s best interests.

**¶19**        This Court views the record in the light most favorable to upholding the court's best interests finding. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016). It is in the child's best interests to terminate parental rights if "the child will benefit from severance" or "the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13 (citation omitted). A court's best interests finding, proven by a preponderance of the evidence, is made at the time of the severance under a totality of the circumstances. *Id.* at 150–51, ¶ 13 ("[C]ourts may consider the negative effect on a child of the continued presence of a statutory severance ground in a totality of the circumstances best-interests inquiry." (quoting *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶¶ 11–12 (App. 2016))); *see also Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013) ("[T]he child's best interests must be proven by a preponderance of the evidence." (citation omitted)).

**¶20**        The juvenile court concluded the totality of the circumstances indicated termination was in A.A.'s best interests. The juvenile court found A.A.'s current "placement [was] meeting all the child's needs" and that A.A. "would benefit from termination because it would provide [her] with a chance toward permanency." *See Bennigno R.*, 233 Ariz. at 350, ¶ 23 (a court determines severance is beneficial by "whether the current placement is meeting the child's needs"). At the severance hearing, testimony regarding A.A. established she was adoptable and expressed a desire "to stay where she[ ] has a home." *See Audra T. v. Dep't of Econ Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) (adoption is a factor favoring severance); *see also Alma S.*, 245 Ariz. at 151, ¶ 14 (when a child's current placement satisfies her needs and adoption is legally feasible and probable, a juvenile court may determine that terminating parental rights to allow for adoption is in the child's best interests). The case manager testified that because Father was unable to maintain care for A.A. and because A.A. had been in foster care for twenty-one months, "it would be detrimental." The court agreed and found "it would be harmful to the child to linger in foster care for an indeterminate period of time." A.A.'s guardian ad litem also agreed it was not in A.A.'s "best interest[s] to return to parents" and believed the Department met its burden in establishing best interests.

**¶21** The Department and the juvenile court acknowledged Father's rehabilitation efforts, *see Alma S.*, 245 Ariz. at 151, ¶ 15 (the court should consider rehabilitative efforts in a best interests determination), including Father's completion of a substance awareness program in April 2023 and his positive interactions with A.A. during his supervised visitations. Additionally, the case manager testified that A.A. did have a strong bond with Father. But a bond between the parent and child, while a consideration, is not dispositive. *Dominique M.*, 240 Ariz. at 98, ¶ 12. The juvenile court noted that despite the bond, Father "had not visited with [A.A.] since December of 2023." This Court holds that sufficient evidence supports the juvenile court's findings.

## CONCLUSION

**¶22** This Court affirms the juvenile court's termination on grounds of neglect and out-of-home placement. It also affirms that termination was in A.A.'s best interests.

