NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO I.J. AND A.J.

No. 1 CA-JV 24-0115

FILED 07-22-2025

---

Appeal from the Superior Court in Mohave County
No. S8015JD202200126
The Honorable Aaron Michael Demke, Judge Pro Tempore

**AFFIRMED**

---

COUNSEL

Alice B., Colorado City
*Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

Mohave County Legal Advocate, Kingman
By Bobbi Shin
*Counsel for Children*

_____

**MEMORANDUM DECISION**

Vice Chief Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Daniel J. Kiley joined.

_____

**W E I N Z W E I G**, Vice Chief Judge:

¶1        Alice B. ("Mother") appeals from the juvenile court's order terminating her parental rights to two daughters.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        We view and recount the facts in the light most favorable to sustaining the juvenile court's order, *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016), and use pseudonyms to protect the daughters' identities, *see* Ariz. R. Sup. Ct. 111(i).

¶3        Mother is the natural parent of Sarah, born in May 2007, and Nellie, born in August 2010.[1]  Mother lives in Colorado City and is a member of the Fundamentalist Church of Jesus Christ of Latter–Day Saints (FLDS), a fringe polygamous sect.

¶4        Samuel Bateman was anointed the sect's prophet and wielded great power over its members who were told to believe Bateman spoke for God and must be obeyed.  Bateman used women and underage girls as currency to control the community, awarding child brides to devoted followers and rescinding them for punishment.  He referred to many women and underage girls in the community as his "wives" and engaged in sexual conduct with them.

¶5        Mother gave Bateman her daughters for a "spiritual marriage."  Sarah was 13 years old; Nellie was 10.  Mother later testified she knew sexual activity "was part of a marriage relationship" and her daughters routinely slept in Bateman's bed.  When asked if she approved of Bateman's sexual relations with her daughters, she asserted her right against self-incrimination.  The daughters later reported that Bateman groped them in public, forced them to strip naked and watch other people

_____

[1]     The court also terminated the father's parental rights, but he is not a party to this appeal.

have sex, and later raped them in isolated areas. Bateman first raped Nellie when she was 11 years old. Sarah was 13. When Sarah said she did not want to have sex with Bateman, he told her "God was displeased" with her.

**¶6** Bateman was arrested on I-40 in fall 2022, driving a pickup truck and towing a box-trailer of female minors between the ages of eleven and fourteen. The trailer had no air vents or cooling system and it contained a five-gallon bucket to serve as a makeshift bathroom. Police officers saw "children's small fingers moving in the gap of the rear trailer door."

**¶7** The FBI later executed a search warrant on Mother's home and found evidence she willingly gave her daughters to Bateman, was aware of Bateman's abuse and took no action to prevent Bateman's access to her daughters. The Department of Child Safety ("DCS") removed both daughters.

**¶8** With the daughters in DCS's custody, DCS offered Mother reunification services, including a psychological evaluation, counseling, family therapy, supervised visits and transportation. Mother did not cooperate. She refused the psychological evaluation and any individual counseling. She participated in two sessions of family therapy. Although Mother participated in supervised visits at first, DCS suspended the visits after Mother brought photos of Bateman and told the daughters not to testify against him. To date, Mother remains loyal to Bateman.

**¶9** DCS moved to terminate Mother's parental rights on willful-abuse and fifteen-month time-in-care grounds under A.R.S. § 8-533(B)(2) and (B)(8)(c). The juvenile court held a two-day trial, during which DCS introduced, among other evidence, forensic interviews and journal entries from the child brides, along with a news article documenting Bateman's abuse. The court terminated Mother's parental rights under both grounds, finding termination was in the daughters' best interests. Mother timely appealed. We have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## PROCEDURAL ERROR

**¶10** Mother has waived her arguments on appeal because she offered no record citations or supporting legal authorities in her brief. *See* ARCAP 13(a) (requiring that briefs contain "citations of legal authorities and appropriate references to the portions of the record on which the appellant relies"); Ariz. R.P. Juv. Ct. 607(b) (applying ARCAP 13 to juvenile appeals); *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (noting

failure to comply with ARCAP 13 "can constitute abandonment and waiver" of a claim). But we exercise our discretion to address Mother's arguments because a child's best interests hangs in the balance. *DeLong v. Merrill*, 233 Ariz. 163, 166, ¶ 9 (App. 2013); *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013) (the best interests of a child trumps the discretionary doctrine of waiver).

## DISCUSSION

**¶11**　　　　Parents have a fundamental but not absolute interest in the care and custody of their children. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). The juvenile court may terminate parental rights if it finds clear and convincing evidence of statutory grounds for termination under A.R.S. § 8-533(B), and termination is in the child's best interests by a preponderance of the evidence. *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 9 (2009).

**¶12**　　　　Mother does not contest the grounds for termination or best interests. She instead argues the juvenile court erred by considering "inconsistent" forensic interviews and hearsay. We review the juvenile court's evidentiary decisions for an abuse of discretion and resulting prejudice. *Lohmeier v. Hammer*, 214 Ariz. 57, 61, ¶ 7 (App. 2006) (citation omitted). The juvenile court does not abuse its discretion if its decisions are "supported by any reasonable evidence." *Id.* at 62, ¶ 7 (citation omitted).

**¶13**　　　　We discern no abuse of discretion. The Arizona Rules of Evidence do not preclude trial courts from considering "inconsistent" evidence. *See* Ariz. R. Evid. (no rule barring admissibility for being inconsistent). The interviews were admissible. What is more, the juvenile court was in the best position to weigh evidence and assess credibility. *See Demetrius L.*, 239 Ariz. at 3, ¶ 9.

**¶14**　　　　Even assuming the evidence was inadmissible hearsay, its admission was harmless. *See Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73, ¶ 12 (App. 2015). The record catalogues Bateman's abuse with overwhelming evidence, including the forensic interviews and Mother's own testimony. *See State v. Williams*, 133 Ariz. 220, 226 (1982) (admission of cumulative evidence constitutes harmless error).

**¶15**　　　　Second, Mother claims the juvenile court was biased because it referred to her and her community as "Samuelites." We review for fundamental error because Mother did not object at the termination hearing. *See Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447, ¶ 37 (2018).

4

Mother must prove "(1) error exists, (2) the error is fundamental, and (3) the error caused [her] prejudice." *Id.* at 447–48, ¶ 38 (citations omitted).

**¶16**     Mother has shown no bias. We presume trial court judges are "free of bias and prejudice." *State v. Ramsey,* 211 Ariz. 529, 541, ¶ 38 (App. 2005). Judicial bias or prejudice must "arise from an extrajudicial source and not from what the judge has done in his participation in the case." *State v. Granados*, 235 Ariz. 321, 326, ¶ 14 (App. 2014) (citation omitted).

**¶17**     Third, Mother argues DCS seized her daughters without legal authority. That is incorrect. DCS seized and removed the daughters pursuant to a valid court order. A.R.S. § 8-821(A)(1).

**¶18**     Finally, Mother challenges the propriety of words spoken by daughters' counsel during a status hearing on December 14, 2022, but she has no standing to make that challenge. *See Pima Cnty. Juv. Severance Action No. S-113432*, 178 Ariz. 288, 291 (App. 1993) (Father had no standing to challenge his children's representation).

## CONCLUSION

**¶19**     We affirm.

**K I L E Y**, J., specially concurring:

**¶20**        I concur in the Majority's decision to affirm the termination of the parental rights of Alice B. ("Mother") to "Sarah" and "Nellie." The evidence in the record overwhelmingly supports the juvenile court's finding of grounds for termination under A.R.S. § 8-533(B)(2) based on Mother's willful failure to protect her preteen daughters by knowingly allowing them to be sexually assaulted and then falsely denying that the sexual abuse ever happened. The record likewise supports the juvenile court's determination that terminating Mother's parental rights would be in the children's best interests by freeing them for adoption into a home where they will be loved and protected. Finally, for the reasons stated by the Majority, *see supra* ¶¶ 12-18, Mother's challenges to the juvenile court proceedings lack merit.

**¶21**        I decline, however, to join Paragraph 4. Mother's parental rights were terminated because of her actions, not her religious affiliation, and so Paragraph 4's discussion of the Fundamentalist Church of Jesus Christ of Latter–Day Saints is, in my view, neither necessary nor appropriate.

