NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.N. and A.N.

No. 1 CA-JV 25-0045
FILED 11-25-2025

Appeal from the Superior Court in Maricopa County
No. JS22250
The Honorable Adele Ponce, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant Father*

Modern Law, Mesa
By Ruby Becker
*Counsel for Appellee Mother*

---

**MEMORANDUM DECISION**

---

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Veronika Fabian joined.

---

**F O S T E R**, Judge:

¶1 Matthew N. ("Father") appeals the superior court's order terminating his parental rights to his children, A.N., born in September 2015, and A.N., born in October 2016. For the reasons below, this Court affirms the order.

## FACTS AND PROCEDURAL HISTORY

¶2 Father and Osiris C. ("Mother") are the parents of 10-year-old A.N. and 9-year-old A.N. Father and Mother lived together in Yuma when the children were born. Father and Mother separated in October 2017. After their separation, Father saw the children sporadically.

¶3 In May 2018, Mother obtained an order of protection against Father, which prohibited him from contacting her and the children. But the court modified the order to allow Father to contact the children. The order of protection expired a year later. Father then petitioned the superior court to establish parenting time.

¶4 In August 2018, Mother and Father signed a parenting time agreement. They agreed to a graduated parenting plan, beginning with Father having supervised parenting time and transitioning to him watching the children unsupervised when Mother was working. The superior court later entered an order approving their parenting plan, granting them joint legal decision-making with Mother having the final say, establishing Father's child support obligation at $783 per month and directing Father to cover the children's medical insurance.

¶5 Under the parenting plan, Father was to start his parenting time by attending jiu-jitsu classes with the children for about two weeks and then graduate to in-home visits. Father went to only one jiu-jitsu class. He instead insisted on seeing the children at the library or McDonald's. The maternal grandmother or Mother supervised those visits, which occurred about ten times in 2018 and around five times in 2019.

**¶6** In 2019, Father moved from Yuma to Chino Valley. The last time he saw the children was in August 2019. He never provided Mother with his new address.

**¶7** In the next four years, Father called the children for their birthdays and on Christmas. He arranged these calls through maternal grandmother. He also sent cards and gifts to the children using maternal grandmother's address three times a year, beginning in 2020.

**¶8** Over the years, Father regularly paid child support through wage garnishments and owes only a small amount of arrears. He never provided medical insurance for the children.

**¶9** In 2019, Mother met her now-husband ("Stepfather"). In 2021, she moved to Phoenix with the children to live with Stepfather, and they married in 2023. Mother did not inform Father that she and the children moved to Phoenix.

**¶10** In December 2023, Father emailed Mother to ask about contacting the children. Mother did not respond, so he emailed her again in May 2024. A few days later, Mother responded by informing him that she petitioned to terminate his parental rights. He texted her to arrange calls with the children, and she facilitated two calls around September 2024. The children did not know they were speaking with their biological father, and neither Mother nor Father told them. Father also asked her for visits with the children, but she denied those requests.

**¶11** The superior court held an initial termination hearing and pretrial conference in July 2024. Father contested the termination petition, and the court directed Mother to obtain a termination social study. *See* A.R.S. § 8-536(A).

**¶12** In January 2025, the superior court conducted a hearing on the termination petition over two consecutive days. The author of the social study, Mother, Father, Stepfather and Father's significant other testified at the hearing. Following the hearing, the court terminated Father's parental rights to the children on the ground of abandonment. The court found that after Father moved to Chino Valley in 2019, he did not have good cause for failing to see the children. The court found Father provided significant financial support by regularly paying child support, and he also sent cards and gifts to the children a few times a year. But the court concluded this support and contact did not "constitute reasonable parental contact and normal supervision." The court also found that termination of Father's parental rights was in the children's best interests.

¶13      Father timely appealed. Ariz. R.P. Juv. Ct. 603(a)(1)(A). This Court has jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶14      The termination of parental rights requires (1) clear and convincing evidence of a statutory ground for termination and (2) a preponderance of evidence that termination is in the children's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). In reviewing the superior court's termination order, this Court accepts the juvenile court's factual findings if reasonable evidence and inferences support them and this Court affirms the juvenile court's legal conclusions on the statutory grounds for the termination unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023). This Court will only overturn the juvenile court's finding of sufficient evidence supporting termination if "no one could reasonably find the evidence to be clear and convincing." *Id.* at 479, ¶ 31 (quotation omitted). Questions of statutory interpretation are reviewed *de novo*. *In re B.W.*, ___ Ariz. ___, 572 P.3d 88, 94, ¶ 14 (2025).

¶15      Father argues the court erred and abused its discretion by terminating his parental rights based on abandonment. *See* A.R.S. § 8-533(B)(1). He does not contest the best interests finding, so the only issue on appeal is whether the abandonment finding is supported by the record. *See Crystal D. v. Dep't of Child Safety*, 241 Ariz. 576, 577–78, ¶¶ 5–7 (App. 2017).

## I.      The court did not err in finding abandonment.

¶16      The parent-child relationship may be terminated when the "parent has abandoned the child." A.R.S. § 8-533(B)(1). "Abandonment" is defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). It is the burden of the party seeking termination to establish grounds supporting termination. *In re B.W.*, 572 P.3d at 95–96, ¶

4

20. If that party establishes *prima facie* grounds for abandonment, the opposing parent must then present evidence to rebut the presumption. *Id.* But the party seeking termination maintains the burden of proof to establish grounds supporting termination. *Id.*

**¶17** Father reads the definition of abandonment as containing two distinct elements that the petitioner must prove. He argues that before the superior court can conclude that a parent abandoned his or her child, it must find the parent both (1) failed to provide reasonable support and (2) failed to maintain regular contact with the child. Father maintains the court erred by finding he abandoned his children though he consistently paid child support. He is incorrect.

**¶18** Under A.R.S. § 8-531(1), the party seeking termination may establish *prima facie* abandonment by proving the parent failed "to maintain a normal parental relationship without just cause" for at least six months. As the Arizona Supreme Court explained:

> Reading § 8-531(1) as a whole, "abandonment" signifies the "[f]ailure to maintain a normal parental relationship." Because "abandonment" means "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision," it logically follows that a "normal parental relationship" exists when a parent provides the support *and* contact with the child that a parent who abandoned the child has failed to offer.

*Id.* (emphasis added). Likewise, this Court's prior opinions have described "reasonable support," "regular contact" and "normal supervision" not as elements the petitioner must prove, but as factors the juvenile court must consider in determining whether a parent has abandoned his or her child. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 18 (App. 2010) (quoting A.R.S. § 8-531(1)); *see also Steven M. v. Dep't of Child Safety*, 254 Ariz. 426, 430, ¶ 12 (App. 2023). Because the concept of abandonment and terms like "reasonable support" or "normal parental relationship" are imprecise and elastic, these are questions of fact left to the juvenile court to resolve. *Maricopa Cnty. Juv. Action No. JS-4283*, 133 Ariz. 598, 601 (App. 1982).

**¶19** Here, Mother presented evidence that Father had not seen the children since 2019. Mother also presented evidence that Father would only call about three times a year, at Christmas and for their birthdays. She also highlighted a lengthy period from December 2023 until the fall 2024 when Father made no attempts to contact the children. The court expressly

considered this evidence and concluded that Father's actions established *prima facie* evidence of abandonment, despite the fact he provided "significant financial support by regularly paying child support." In considering whether there was just cause for Father's failure to maintain a normal parental relationship with the children, the court also considered evidence that Mother did not give Father's cards to the children and did not identify him as their Father when he called. But viewing all the evidence, the court found that there was no just cause for Father's lack of contact with the children and concluded that Mother established abandonment. This conclusion is supported by reasonable evidence and is not clearly erroneous.

## II.     Remand is not warranted.

¶20        Father argues this case must be remanded to re-examine the court's finding of abandonment after the Supreme Court's recent opinion, *In re B.W.*, 572 P.3d 88. Father challenges the court's findings arguing that *B.W.*'s new definition of "just cause" requires remand. *See In re B.W.*, 572 P.3d at 96, ¶ 24. He also challenges the court's findings that he did not vigorously assert his parental rights and failed to maintain regular contact with the children.

¶21        *In re B.W.* involved a father who was prohibited from contacting mother due to a criminal case. *Id.* at 93, ¶ 5. There, the Supreme Court defined "just cause" as a "reasonable and fair justification for not maintaining a normal parental relationship with the child and [the parent] relied on that justification in good faith." *Id.* at 96, ¶ 24. The Supreme Court explained that when determining "just cause," courts "should examine what a parent has done to facilitate a normal parent-child relationship in accordance with *Michael J.*" *Id.* at 97, ¶ 26; *see Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 22 (2000) (a parent "must act persistently" to establish and maintain a relationship with his child and "must vigorously assert his legal rights to the extent necessary"). However, the Supreme Court further explained

> the juvenile court . . . must also consider that the parent's conduct—or ability to 'do something'—may be affected by a parent's reasonable good faith belief that circumstances exist that preclude the parent from exercising traditional methods of maintaining a normal parental relationship.

*In re B.W.*, 572 P.3d at 97, ¶ 26. Applying its just cause definition, the Supreme Court addressed the additional circumstances the parent

experienced in his termination proceeding including (1) unclear or conflicting legal advice from his family law attorney and his criminal defense attorney; (2) difficulty in contacting a young child without contact to the other parent; and (3) overall confusion or misunderstanding about what was legally and realistically possible. *Id.* at 97–98, ¶ 30. The Supreme Court remanded the case on grounds that the juvenile court could not have determined what the parent reasonably believed he could do to form and maintain a relationship with the child, given the additional circumstances addressed. *Id.* at 98, ¶ 32. But the facts in *B.W.* are much different than those here.

**¶22** Here, Father was not prohibited from contacting Mother as in *B.W.*, but the court still considered whether Father had justification for abandoning the children. The court found:

> [Father] gave *no adequate reason* for failing to participate in the [parenting] plan to which he agreed.
>
> Although Father moved away, there was *insufficient cause* provided for his failure to see the children at all after 2019. Even assuming Father[] made requests to maternal grandmother in 2023 to see the children that were ignored, this *would not justify* his failure to see the children for so long.
>
> Father has not made more than a minimal effort to be in the children's lives with *little cause*.

These findings show the court thoroughly examined Father's defenses and rejected them.

**¶23** On the issue of Father asserting his rights, the court observed that in 2018 Father petitioned to establish his parenting time. He also agreed to a parenting plan through mediation that was designed to incrementally increase his parenting time to equal time. But the court found he did not participate in the parenting plan and "gave no adequate reason" for failing to see the children after 2019. The court rejected his explanation that poor communication with Mother and maternal grandmother, financial hardship and his move to Chino Valley justified his absence from the children's lives. The court also found "[Father] claims to be incapable of filing anything in family court on his own, which is not credible."

**¶24** Additionally, Father testified he did not exercise his parenting time because "[he] did not like the plan that [they] agreed upon." When asked why he did not attempt to modify that parenting plan, he explained

"[b]ecause every time I went to get anything done, it costs a lot of money, and I thought that maybe I could work it out with [maternal grand]mother instead." He stated that "over the last five years, [he] thought that [he and Mother] could make arrangements outside the courts," but failed to point to his attempts to do so. He acknowledged "I've let other things get in the way [of having a relationship with the children], like my relationship with [Mother], and at times her mother."

¶25 Father also argues that the court misstated the evidence when it said "[t]here was a lengthy period . . . when Father did not call the children." But he testified that for a period around 2023, he spoke to the children "very, very rarely." And in August 2024, he admitted to the author of the social study that "it has been at a minimum 18 months, since he last spoke to the children." The court did not misstate the evidence, and this Court will not reweigh it or re-evaluate the credibility of witnesses. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366, ¶ 8 (App. 2022).

¶26 Father finally contends the superior court abused its discretion by finding Mother's actions did not justify his failure to maintain a normal parental relationship with the children. (Citing *Calvin B.*, 232 Ariz. 292, 297, ¶ 25 (App. 2013) and *In re Maricopa Cnty. Juv. Action No. JS-3594*, 133 Ariz. 582, 586 (App. 1982).) Father argues he showed "unwavering dedication and persistence, [which] refuted the allegation of abandonment." Father argues Mother also (1) "never explained to the children that the man who called them on their birthdays, on Christmas, was their biological father"; (2) "delegated all coordination of phone calls and visits to [the maternal grandmother], even after the protective order expired"; and (3) "failed to inform Father the children had moved to Phoenix."

¶27 But Father testified he chose to communicate with the maternal grandmother because he felt more comfortable speaking to her. He also testified that, like Mother, he never told the children he was their biological father during their calls. And although Mother did not tell Father she moved to Phoenix in 2021, he had joint legal decision-making and yet did not contact her for nearly four years to inquire about where the children were living, attending school or receiving medical care.

¶28 On this record, the court did not err in finding that Mother established clear and convincing evidence of abandonment. Remand is therefore unnecessary.

### III.    Mother is not entitled to attorneys' fees and costs.

**¶29**        Mother asks for an award of attorneys' fees and costs on appeal citing, A.R.S. §§ 25-324(A), 25-415(A)(2) and Arizona Rule of Civil Appellate Procedure ("Rule") 21(a).

**¶30**        This Court rejects Mother's unsupported request. Rule 21(a) does not apply to juvenile proceedings. *See* Ariz. R.P. Juv. Ct. 602(i). Further, § 25-324(A), found in Title 25, governs divorce and custody matters and does not apply here. *See Matter of Pima Cnty. Juv. Severance Action No. S-113432*, 178 Ariz. 288, 294 (App. 1993) ("Title 25 includes annulments, dissolutions, and child custody; it does not include severance proceedings."). Similarly, § 25-415 permits a court to sanction misconduct in legal decision-making and parenting time cases, which this is not.

### CONCLUSION

**¶31**        For the foregoing reasons, this Court affirms the juvenile court's order terminating Father's parental rights to the children.

